Cw **FILED**

SEP 30 2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

1

2          POSTED ON WEBSITE

3          NOT FOR PUBLICATION

4      UNITED STATES BANKRUPTCY COURT
       EASTERN DISTRICT OF CALIFORNIA
5              FRESNO DIVISION

6    | In re                          )    Case No. 10-63833-B-7
7    | Ryan Frank Greer and           )    DC No. UST -1
     | Brooke Rachelle Greer,         )
8    |                                )
     |          Debtors.              )
9    | _____)

10   |                                )
     | Diane Lanell Lunn,             )    Case No. 10-62282-B-7 ✓
11   |                                )
     |          Debtor.               )    DC No. UST-1
12   | _____)

13   |                                )
     | Joseph Alfred Enriquez and     )    Case No. 10-62662-B-7
14   | Bertha Enriquez,               )
     |                                )    DC No. UST-1
15   |          Debtors.              )
16   | _____)

17   | Steve Reed Hodson and          )    Case No. 10-62666-B-7
     | Sherry Lynn Hodson,            )
18   |                                )    DC No. UST-1
     |          Debtors.              )
19   | _____)

20

21   **MEMORANDUM DECISION REGARDING MOTIONS TO
     DISMISS PURSUANT TO 11 U.S.C. § 707(b)**

22   This disposition is not appropriate for publication. Although it may be cited
     for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has
23   no precedential value. See 9th Cir. BAP Rule 8013-1.

24   Gregory S. Powell, Esq., appeared on behalf of the acting United States
     Trustee, August B. Landis, Esq.
25
     Robert S. Williams, Esq., appeared on behalf of the above-referenced
26   debtors.

27

28

                                                            39

1    Before the court are four motions filed by August B. Landis, Esq.,

2    Acting United States Trustee (the "UST") to dismiss the above-referenced

3    cases pursuant to 11 U.S.C. § 707(b)(1) (the "Motions").  In each case, the

4    Debtors have tried to deduct expenses from their current monthly income

5    ("CMI") which exceed the amounts allowed by the Internal Revenue

6    Service's National and Local Standards (the "IRS Standards").  The

7    deductions are based on the amounts that the Debtors actually spend.  In

8    each case, allowance or disallowance of the deductions will determine if the

9    case is presumptively an abuse of chapter 7 and subject to dismissal under

10   § 707(b)(2).  For the reasons set forth below, the Motions will be granted,

11   provided the Debtors shall first have an opportunity to convert their cases to

12   chapter 13.

13       This memorandum decision contains findings of fact and conclusions

14   of law required by Federal Rule of Civil Procedure 52(a) made applicable to

15   this contested matter by Federal Rule of Bankruptcy Procedure 7052.[1]  The

16   bankruptcy court has jurisdiction over this motion pursuant to 28 U.S.C.

17   §§ 1334 and 157, 11 U.S.C. §§ 363 and 548, and General Orders 182 and

18   330 of the U.S. District Court for the Eastern District of California.  This is

19   a core proceeding pursuant to 28 U.S.C. subsections 157(b)(2)(A) & (O).

20   **Background and Findings of Fact.**

21       These bankruptcy cases were filed as voluntary chapter 7 petitions in

22   October and November 2010.  With their petitions, the Debtors filed all

23

24   _____

25   [1]Unless otherwise indicated, all chapter, section and rule references are to
     the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of
26   Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *after*
     October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and
27   Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

28                                    2

1  required schedules and the statement of financial affairs.  With the

2  schedules, the Debtors filed Official Form 22A, the Chapter 7 Statement of

3  Current Monthly Income and Means-Test Calculation (the "Means Test").

4  The Debtors are all individuals and their debts appear to be primarily

5  consumer debts.  The Debtors all have above-median incomes.  Their

6  Means Tests indicate that the presumption of abuse arises based on the 60-

7  month disposable income calculated on line 51, which is greater than the

8  "presumption of abuse" threshold of $11,725.

9       In each case, the Debtors deducted on the Means Test the applicable

10  expenses allowed by § 707(b)(2) which incorporates the IRS Standards for

11  various expense categories.  However, the Debtors also deducted, on line 56

12  of the Means Tests, additional amounts which they actually spend in excess

13  of the IRS Standards in the same categories (the "Additional Expenses").

14  Deduction of the Additional Expenses results in a negative monthly

15  disposable income ("DI") in each case.  The Debtors have offered evidence

16  of their Additional Expenses, which they contend are reasonable and

17  necessary because they reflect the Debtors' actual expenses.

18       **The Greer Case.**  Ryan and Brooke Greer's Means Test shows that

19  the Debtors have a DI of $928.55.  Over a 60-month period this calculates

20  to $55,713, which far exceeds the "presumption of abuse" threshold.

21  However, on line 56, the Debtors deducted Additional Expenses for

22  housing & utilities, and for food, clothing & other expenses, totaling

23  $1,160.11.  If allowed, these Additional Expenses would give the Debtors a

24  DI of *negative* $231.56.

25       The IRS Standards allow the Debtors to deduct $504 for non-

26  mortgage housing and utilities.  The Greers took this full deduction plus an

27

28                    3

additional $212.  They contend that their housing and utility costs exceed the IRS Standard allowance because their water pipes frequently break, causing water usage and damage, and they cannot afford to replace the pipes.  Their AT&T bills include a home telephone and two cell phones, they have an old swimming pool which uses excess energy, and they pay a pool service for chemical treatments.  The Greers cite their house's age, size, and lack of carpeting and insulation for the excess energy costs, and they pay Mr. Greer's brother to mow the lawn.

The IRS Standards allow the Greers to deduct $1,633 for food, clothing & other items.  They took this full deduction plus an additional $947.69.  The Greers contend that they must eat take-out meals because they work out of town and do not have time to prepare food at home.  They claim excess clothing expenses because their children are growing.  Mr. Greer wears uniforms for work which have to be dry cleaned.  They also claim this expense is high because they buy supplies for house cleaning and personal hygiene.

**The Lunn Case.**  Diane Lunn's Means Test shows that the Debtor has a DI of $599.19.  Over a 60-month period this calculates to $35,951.40, which far exceeds the "presumption of abuse" threshold.  However, on line 56, the Debtor deducted Additional Expenses for food, clothing & other expenses; housing & utilities; and rent totaling $740.37.  If allowed, these additional deductions would give the Debtor a DI of *negative* $141.18.

The IRS Standards allow Ms. Lunn to take a deduction of $526 for food, clothing & other expenses.  She took this full deduction plus an additional $446.55.  Ms. Lunn states that she spent an average of $788.34 per month for food during the six months prior to filing her bankruptcy case

4

plus $43.85 for clothing and $19.50 for personal care.  She concludes,
without specifics or supporting facts, that these expenses are necessary to
her health and welfare.

The IRS Standards allow Ms. Lunn to deduct $360 for non-mortgage
housing & utilities.  The Debtor took this full deduction plus an additional
$239.82. Ms. Lunn is employed as a claims adjuster with an insurance
company.  She asserts that the additional expenses in this category are
necessary because she works from home.  The additional utility expense is
due to the fact that the house is large, she must keep the temperature in the
house comfortable and she has a swimming pool to maintain.  The high
telephone bills, which include the fax machine, internet service, and cable
television service, are used in her work.  Ms. Lunn also claims expenses for
a cell phone.

The IRS Standards allow a deduction of $796 for mortgage/rent
expense.  Ms. Lunn claimed this full deduction plus an additional $54.  Ms.
Lunn states that she shares a large home and expenses with her adult
daughter.  She pays one-half of the rent, or $850 per month, which explains
the excess.  She has not disclosed the daughter's income or made any
showing of how much her daughter contributes to the total household
expenses for which Ms. Lunn took the full allowance.

**The Enriquez Case.** Joseph and Bertha Enriquezes' Means Test
shows that they have a DI of $512.32.  Over a 60-month period this
calculates to $30,739.20, which far exceeds the "presumption of abuse"
threshold.  On line 56, the Debtors deducted Additional Expenses in the
categories of transportation, food, clothing & other expenses, and housing
& utilities, totaling $1,154,89.  If allowed, these deductions would give the

5

Debtors a DI of *negative* $642.57.

The IRS Standards allow the Enriquezes to deduct $1,371 for food, clothing and other items. They took this full deduction plus an additional $207.75. They contend that their food, clothing, and other expenses, including cleaning supplies, personal hygiene products, and non-prescription medications, are so high because they have a family of four.

In the transportation category, the IRS Standards allow a deduction of $472 for vehicle operating costs. They took this full deduction plus an additional $644. They also claimed deductions of $479.59 for vehicle ownership expense and $512.41 representing the monthly debt service on their vehicle loans. The Enriquezes contend that the Additional Expense is necessary because they have four cars. Both Debtors drive to work, and their two children, ages 16 and 21, each drive themselves to school.

The IRS Standards allow a deduction for non-mortgage housing and utilities in the amount of $496. The Debtors took this full deduction plus an additional $303.22. The Debtors cite the age of their house–29 years– and age of their air conditioning unit as the reason for the high utility and repair bills. They also maintain an alarm system because they live in an unsafe neighborhood.

**The Hodson Case.** Steve and Sherry Hodson's Means Test shows that they have a DI of $2,718.61. Over a 60-month period, this calculates to $163,116.60, which far exceeds the "presumption of abuse" threshold. However, on line 56, the Debtors deducted Additional Expenses for housing & utilities; food, clothing & other items; transportation; and rent totaling $3,101.25. If allowed, these additional deductions would give the Debtors a DI of *negative* $382.64.

6

1    The IRS Standards allow the Hodsons to take a deduction of $445
2  for non-mortgage housing and utilities. The Hodsons took this full
3  deduction plus an additional $1,257.88. The Hodsons explain that their
4  housing and utilities expenses average $1,283.26, approximately the same
5  amount they listed on line 56. Therefore, it appears that they double-
6  counted the $445 already allowed by the IRS Standards. They explain the
7  additional housing and utilities expense by stating that their large yard
8  needs regular maintenance, their gardener is competitive, their house is
9  large, the air conditioner is too small, and their spa causes higher energy
10  and water bills.[2]

11    The IRS Standards permit the Hodsons to deduct $1,152 per month
12  for food, clothing, and other items. They took the full deduction plus an
13  additional $530 for this category of expense. The Hodsons support one of
14  their sons, his girlfriend, and their baby. They do not disclose how much, if
15  anything, their son can or does contribute to the household expenses. The
16  Hodsons also spend money for alcohol and cigarettes, which help them
17  sleep at night when they are stressed. They spend a large amount on
18  clothing because Mr. Hodson must dress professionally in his job.

19    The IRS Standards allow the Hodsons to deduct transportation
20  operating expenses in the amount of $472, and transportation ownership
21  expenses of $84 each month. In addition, they may deduct $411.99 each
22  month for payments secured by their vehicles. The Hodsons took these full
23  deductions plus an additional $298.90. They explain that the additional
24  expense is necessary because they must make extra trips to doctors and

25  _____

26    [2]The Hodsons state, without supporting documentation, that Mrs.
27  Hodson has a disability and her doctor has approved the spa.

28                                7

pharmacies due to Mrs. Hodson's health condition. Their auto insurance is high because of their location and Mr. Hodson's bad driving record.

The IRS Standards allow the Hodsons to deduct $986 for rent. They took this full deduction plus an additional $1,014. They contend that they cannot find a lower cost place to live because they have bad credit.

**Issues Presented.**

The UST contends that the Additional Expenses cannot be deducted from CMI and that these cases are presumptively an abuse of chapter 7. In the alternative, the UST argues that each case is an abuse of chapter 7 under the "totality of the circumstances" test, meaning that the Debtors can afford to make a substantial distribution to unsecured creditors through a chapter 13 plan. The Debtors acknowledge that their cases are presumptively abusive without the Additional Expenses. If the court finds that the presumption of abuse has not been rebutted, the court does not need to address the UST's alternative argument.

The limited issue addressed in this memorandum is may the Debtors deduct, from their CMI, the Additional Expenses in excess of those allowed by the IRS Standards simply because the deductions reflect their actual expenditures without having to show that the Additional Expenses qualify as "special circumstances."

**Analysis and Conclusions of Law.**

**Applicable Law.** The Bankruptcy Code offers three mutually exclusive ways to determine when a case constitutes an abuse of chapter 7. "Abuse" may be presumed based on the "means test" factors defined in §707(b)(2). Alternatively, it may be established as a function of either "bad faith" under §707(b)(3)(A) and/or the "totality of the circumstances" under

8

1  §707(b)(3)(B). The UST brings this motion under § 707(b)(2)(A)(i), based

2  on the presumption of abuse.  He does not contend that any of the cases

3  were filed in bad faith.

4      The presumptive of abuse in a chapter 7 case is determined through

5  the means test based on the debtor's income and various allowed

6  deductions.  The means test was created as part of the Bankruptcy Abuse

7  Prevention and Consumer Protection Act ("BAPCPA"), which Congress

8  enacted "to correct perceived abuses of the bankruptcy system" and to "help

9  ensure that debtors who *can* pay creditors *do* pay them." *Ransom v. FIA*

10  *Card Services, N.A. (In re Ransom)*, 131 S.Ct 716, 721 (2011) (emphasis in

11  original, citations omitted).

12      Here, the Means Tests show that each Debtors' monthly income

13  exceeds the State of California's applicable median income which makes

14  the Debtors' income "above median."  From their CMI, the Debtors may

15  deduct "applicable monthly expenses" based, *inter alia*, on the IRS

16  Standards.  A case is presumed to be an abuse of chapter 7 if the resulting

17  60-month disposable income exceeds $11,725, or approximately $195.42

18  per month. § 707(b)(2)(A)(ii)(II).  That presumption of abuse may only be

19  rebutted if the Debtors can show that they have additional expenses which

20  qualify as "special circumstances." § 707(b)(2)(B)(i).

21      "Special circumstance" expenses are not specifically defined, nor did

22  Congress provide an exhaustive list of "special circumstances," but they are

23  described in the Bankruptcy Code as those expenses equivalent to "a serious

24  medical condition or a call or order to active duty in the Armed Forces."

25  § 707(b)(2)(B)(i).  It has been noted that the examples given by Congress (a

26  serious medical condition or a call to active duty in the Armed Forces)

27

28                                        9

"both constitute situations which not only put a strain on a debtor's household budget, but they arise from circumstances normally beyond the debtor's control." *Egebjerg v. United States Trustee (In re Egebjerg)*, 574 F.3d 1045, 1053 (9th Cir. 2009) (citation omitted).

The debtor has the burden of proof to establish the "special circumstances" through an analysis involving a four-part inquiry. To justify an additional expense or adjustment to current monthly income, the debtor must (1) demonstrate that there is no reasonable alternative for the additional expense (§ 707(b)(2)(B)(i)), (2) itemize the additional expense (§ 707(b)(2)(B)(ii)), (3) provide documentation for the expense (§ 707(b)(2)(B)(ii)(I)), and (4) provide a detailed explanation of the special circumstances that make the expense necessary and reasonable (§ 707(b)(2)(B)(ii)(II)).[3] The debtor must attest under oath as to the accuracy of the information offered to demonstrate that the "special circumstance" expenses or adjustments to income are required (§ 707(b)(2)(B)(iii)).

**The Debtors May Not Deduct the Additional Expenses Unless They Are "Special Circumstances."** Each of the Additional Expenses requested by the Debtors on line 56 of their Means Tests are expenses that fall into categories already covered by the IRS Standards. The Debtors contend that the Additional Expenses reflect the Debtors' actual needs based on their personal living situations. For purposes of this ruling, the

---

[3]The Debtors have filed with their responses copies of numerous documents which they contend sufficiently document their Additional Expenses. The UST does not contend in this Objection that the Debtors' Additional Expenses were not adequately itemized or documented. This Objection is based solely on the first and fourth "special circumstances" factors identified above.

10

1  court accepts that representation as true but that is not the end of the

2  inquiry. The UST contends that the Additional Expenses should be

3  disallowed because they fall into categories for which the IRS Standards

4  already make a "no-look" allowance, meaning that the Debtors may take the

5  full deduction in each category without having to produce evidence to show

6  what they actually spend. Where applicable, the IRS Standard deductions

7  are adjusted to reflect local conditions and the Debtors' household size.

8  The Debtors have claimed the full "no-look" deductions on their Means

9  Tests at lines 19A (food, clothing and other items), 20A (housing and

10  utilities; non-mortgage expenses), 20B (housing and utilities; mortgage/rent

11  expense), 22A (vehicle operating expense), and 23 (vehicle ownership

12  expense).

13      The UST's argument for disallowance of the Additional Expense

14  deductions on line 56 of the Means Tests is based on the language in

15  § 707(b)(2)(A)(ii)(I), which sets up the method for determining the

16  presumption-of-abuse issue,

17      "The debtor's monthly expenses *shall be* the debtor's
    applicable monthly expense amounts specified under
18      the [IRS Standards], and the debtor's actual monthly
    expenses for the categories specified as Other
19      Necessary Expenses issued by the Internal Revenue
    Service for the area in which the debtor resides, as in
20      effect on the date of the order for relief . . . .
    (Emphasis added.)

21

22      Here, some of the Debtors have claimed various "other necessary

23  expenses" on lines 25-32 of their Means Tests. The UST has not objected

24  to those "other necessary" deductions where applicable.[4] The Additional

25  _____

26      [4]The means test allows a debtor to document and deduct additional

27  expenses actually incurred for home energy costs (line 37) and up to 5% for

28                          11

1   Expenses to which these Motions relate are listed as "other expenses" on
2   line 56, and they represent monies which the Debtors spend in addition to
3   the no-look deductions.  In that regard, they are not "other expenses"
4   because they are already provided for in the "no-look" categories.  The UST
5   contends that the Additional Expenses are absolutely prohibited by the
6   "shall be" language in § 707(b)(2)(B)(ii)(I).  In other words, the UST argues
7   that the Additional Expenses cannot be allowed under any circumstances
8   based on the "shall be" language in the statute.

9       The court agrees with the UST that the "shall be" language in
10  § 707(b)(2)(B)(ii)(I) prohibits the deduction of expenses in excess of the
11  IRS Standards simply because the debtor actually spends more than the
12  allowance.  Clearly, the "shall be" language in the statute was intended by
13  Congress to limit the deductions which can be taken pursuant to the IRS
14  Standards without proper documentation and explanation.  However, the
15  UST's interpretation of the "shall be" term as an absolute prohibition of any
16  additional deduction is too restrictive.  Nothing in the Bankruptcy Code
17  suggests that the court cannot consider situations where the IRS Standard
18  deduction may not be sufficient for a particular reason.  That is why
19  Congress added the "special circumstance" provision in § 707(b)(2)(B).  A
20  debtor may rebut the presumption of abuse if he or she can show that there
21  is an additional expense which qualifies as a "special circumstance."  The
22  "special circumstance" provision in the Code would have almost no
23  meaning if it only applied to expenses which could not be forced into one of
24  the categories identified in the IRS Standards.  Nothing in the Bankruptcy

25

26  additional food and clothing (line 39).  None of the Debtors in these cases took
27  any deductions on lines 37 and 39.

28                              12

1   Code suggests that Congress intended the presumption-of-abuse calculation
2   to be so draconian.  The Code does allow for the deduction of expenses
3   which exceed the IRS Standards so long as those additional expenses satisfy
4   the "special circumstances" criteria.

5          **The Additional Expenses Do Not Qualify as "Special**
6   **Circumstances."**  The Debtors contend in their supporting declarations that
7   all of the Additional Expenses are reasonable and necessary for a variety of
8   reasons summarized above.  The Debtors have asked the court in their
9   supplemental briefs to make a ruling as to the allowance or disallowance of
10  every Additional Expense that they claimed.  However, the court does not
11  need to rule as to every Additional Expense requested by the Debtors.  The
12  court does not need to determine in these chapter 7 proceedings how much
13  DI should be allowed to each Debtor.  So long as the amount of Additional
14  Expense to be disallowed is sufficient to raise the Debtors' DI above the
15  presumption-of-abuse threshold of $195.42 per month, then the case must
16  be dismissed or converted to chapter 13.  Once the presumption of abuse is
17  established, then the Debtors should have an opportunity to convert their
18  case to chapter 13.  Upon conversion, the Debtors will have to file Official
19  Form 22C, the chapter 13 means test which is designed to show how much,
20  if anything, the Debtors can pay to their unsecured creditors.  That
21  determination is best made by the chapter 13 trustee, in the context of a
22  chapter 13 case.

23          The difficulty here lies in the fact that the Debtors' Additional
24  Expenses do not relate to discrete deductions that the court can review and
25  consider in light of the "special circumstances" factors.  The Additional
26  Expenses are lumped together into general categories and they include
27
28                                  13

many different components, some of which may be entitled to "special circumstances" treatment if presented with proper documentation and supporting evidence. The analysis is further complicated by the fact that the Debtors' declarations offer little from which the court can separate "reasonable and necessary" expenses from "lifestyle" choices. The IRS Standards already allow "no-look" deductions, on lines 19A through 24 of the Means Test for the kinds of Additional Expenses listed on line 56. The Debtors took those full deductions. Where applicable, the no-look deductions are adjusted to meet the Debtors' individual needs based on their location and household size. Clearly, with the enactment of BAPCPA, Congress intended that debtors who seek bankruptcy relief, and whose individual lifestyle may interfere with the ability to fully pay their creditors, must be prepared to make some adjustments to their lifestyle in a good faith effort to repay the creditors as much as they can afford. Otherwise, the Debtors are essentially asking their creditors to fund the cost of their lifestyle.

The wording of the Bankruptcy Code allows the court some discretion to allow a "special circumstance" expense when there is a true need for the expense due to circumstances which are unquestionably beyond the debtor's control and for which there is no reasonable alternative. Cases in which the courts have allowed the deduction of extra expenses usually involve extraordinary situations.

Turning now to each of the cases, in the Greer case, the Debtors have claimed an Additional Expense in the amount of $947.69 for food, clothing and other expense. Their total deduction in this category, including the IRS Standard allowance, is $2,580.69 per month. The Greers have claimed an

14

1  Additional Expense of $212 for non-mortgage housing and utilities. Their
2  total deductions in this category, including the IRS Standard allowance, is
3  $716 per month. Their declaration explains why they actually spend this
4  much, but it fails to explain why the Additional Expenses relate to
5  extraordinary situations, or are beyond their control and without any
6  reasonable alternative.

7      The IRS Standard allowance already provides for many of the
8  expenses, such as clothing, cleaning supplies, and personal hygiene. Is the
9  choice to pay for yard care and to eat take-out meals really a physical
10 necessity, or is it a lifestyle choice? Accordingly, these Additional
11 Expenses cannot be allowed as "special circumstances." Without these
12 deductions, the Greers have over $900 of monthly disposable income which
13 makes their case an abuse of chapter 7.

14     In the Lunn case, the Debtor has claimed an Additional Expense in
15 the amount of $446.55 for food, clothing and other expense. Her total
16 deduction in this category, including the IRS Standard allowance, is
17 $972.55 per month. She argues, without supporting evidence, that the
18 Additional Expense in this category, all of it, is reasonable and necessary to
19 her health and welfare. The IRS Standards already allow a $60 deduction
20 for health care, which Ms. Lunn took. She offers nothing to explain
21 specifically what this expense is for, or why it is beyond her control and
22 without any reasonable alternative. Accordingly, the expense cannot be
23 allowed as a "special circumstance." Without this deduction alone, Ms.
24 Lunn has over $300 of monthly disposable income which makes her case an
25 abuse of chapter 7.

26     In the Hodson case, the Debtors have claimed Additional Expenses
27
28                                    15

in the amount of $1,257.88 for housing and utilities. Their total deduction in this category, including the IRS Standard allowance, is $1,702.88 per month. As noted above, it appears that they double-counted the IRS Standard deduction allowed on line 20A. The Hodsons claimed an additional expense of $530 for food, clothing, and other items. Their total deduction in this category, including the IRS Standard allowance is $1,682 per month. Again, their declaration explains where this money is going, but it does not adequately explain why all of these Additional Expenses are beyond their control and without any reasonable alternative. How much can or does their son and his girlfriend contribute to the household expense? How much do they actually spend on cigarettes and alcohol to help them sleep? Is that an extraordinary situation? What must Mr. Hodson purchase every month for clothing to meet his "professional needs"? Is their yard care a physical necessity or a lifestyle choice? Accordingly, these Additional Expenses cannot be allowed as a "special circumstance." Without these deductions alone, the Hodsons have over $1,400 of monthly disposable income which makes their case an abuse of chapter 7.

In the Enriquez case, the Debtors have claimed Additional Expenses in the amount of $643.92 for transportation and $207.75 for food, clothing and other expense. Their total deductions in these categories, including the IRS Standard allowances for food, clothing, vehicle ownership and operating expense and secured car payments, is $3,686.67 per month. Again, the Debtors' declaration explains where these monies are going, but it does not explain why all of these Additional Expenses arise from extraordinary situations, or are beyond their control and without any reasonable alternative. The fact that they have a family of four has already

1  been factored into the IRS Standards.  Is there no reasonable alternative to
2  supporting four automobiles, including one for an adult child?
3  Accordingly, the expenses cannot be allowed as a "special circumstance."
4  Without these two deductions, the Enriquezes have over $200 of monthly
5  DI which makes their case an abuse of chapter 7.

6  **Conclusion.**

7      Based on the foregoing, the court finds and concludes that the
8  Debtors may not deduct from their CMI the Additional Expenses for
9  specific categories already covered by the IRS Standards, simply because
10  they actually incur those expenses.  The fact that the money is actually spent
11  does not automatically make the expense necessary and reasonable.  The
12  IRS Standards define and limit what may be deducted in each category for
13  which the Debtors have claimed Additional Expenses.  Unless the
14  Additional Expenses qualify as "special circumstances," they cannot be
15  allowed.  In each of the above cases, the Debtors have a monthly DI which
16  gives rise to the presumption of abuse.  The Debtors have claimed
17  Additional Expenses which cannot be allowed in an amount sufficient to
18  rebut the presumption of abuse.  Each case is therefore an abuse of chapter
19  7.

20      The Motions will be granted subject to the Debtors' right to first
21  convert their cases to chapter 13 for review by the chapter 13 trustee.  The
22  Debtors shall have 14 days from entry of this Memorandum to file and
23  serve a request for conversion.  The cases may be converted by ex parte
24  application without the necessity of a noticed motion.  Any case not
25  converted within 14 days shall be dismissed and the UST may submit the
26  dismissal order at the conclusion of the allowed time.  This ruling is without
27
28                                      17

1  prejudice to the Debtors' right to reconvert their case to chapter 7 if the

2  chapter 13 trustee determines that there is insufficient disposable income to

3  fund a meaningful chapter 13 plan based on the Debtors' current

4  circumstances.

5      Dated: September ___30___, 2011

6

7

8  W. Richard Lee
   United States Bankruptcy Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                          18

Diane Lanell Lunn, Case No. 10-62282-B-7/DC No. UST-1

Diane Lanell Lunn
4201 Almond Grove Lane
Bakersfield, CA 93312

Robert S. Williams, Esq.
Attorney at Law
1300 18th St., #B
Bakersfield, CA 93301

Gregory S. Powell, Esq.
Office of the U.S. Trustee
2500 Tulare St., Ste. 1401
Fresno, CA 93721

Jeffrey M. Vetter
Chapter 7 Trustee
P.O. Box 2424
Bakersfield, CA 93303